UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EUGENE CASTENEDA, | No. 2:14-cv-1903-JAM-CKD |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and that the Commissioner's cross-motion for summary judgment be granted.

I.   BACKGROUND

Plaintiff, born March 9, 1981, applied on April 28, 2010 for DIB, alleging disability beginning March 1, 2008. Administrative Transcript ("AT") 15, 36. Plaintiff alleged he was unable to work due to extreme obesity, severe depression, anxiety with agoraphobia, and sleep apnea. AT 164. In a decision dated May 1, 2013, the ALJ determined that plaintiff was not

/////

disabled.[1]  AT 15-25.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2008 through his date last insured of December 31, 2012.
>
> 3. Through the date last insured, the claimant had the following severe impairments: extreme obesity, an affective disorder, sleep apnea without use of CPAP, and an anxiety disorder with agoraphobia.
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolding. He could occasionally balance, stoop, kneel, and crouch, but never crawl. The claimant could not work with hazards in the workplace, defined as moving machinery and unprotected heights. He could not operate a motor vehicle. The claimant could not be exposed to extreme heat and humidity. He retained the abilities to engage in simple tasks with no interaction with the public.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on March 9, 1981, and was thirty-one years old, which is defined as a younger individual age 18-44, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant could have performed.

10. Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2008, the alleged onset date, through December 31, 2012, the last insured.

AT 17-25.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) failed to include plaintiff's fatigue, diabetes, and complications stemming from his extreme obesity as "severe" impairments at step two; (2) improperly considered the medical opinion evidence when assessing plaintiff's residual functional capacity ("RFC"); (3) improperly assessed the credibility of plaintiff's testimony; (4) improperly assessed the credibility of the lay witness testimony; and (5) failed to adequately address plaintiff's mental impairments when there was evidence in the record and new medical evidence submitted to the Appeals Council contrary

3

to the ALJ's conclusion.

III.     LEGAL STANDARDS

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts. Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled. "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in [his] favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Bellamy v. Secretary of Health & Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d 1014 (C.D. Cal. 2000) (same). This evidence then is reviewed under the substantial evidence standard. Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983)).

Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

IV. <u>ANALYSIS</u>

    A.    <u>The ALJ did not Err in Considering Plaintiff's Impairments at Step Two</u>

First, plaintiff asserts that the ALJ erred at step two of her analysis by finding that plaintiff's sleep apnea was not a "severe" impairment when plaintiff was using a CPAP machine. Plaintiff also argues that the ALJ erred by not finding that diabetes and complications arising from plaintiff's extreme obesity were "severe" impairments.

An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

        1.    *Sleep Apnea with Use of a CPAP Machine*

Plaintiff first asserts that the ALJ erred by finding that plaintiff's sleep apnea was severe when he was not using a CPAP machine at night, but that this impairment was not severe when he regularly used a CPAP machine. Plaintiff claims this determination was erroneous because the evidence in the record shows that plaintiff still suffered from daytime sleepiness and fatigue even when he was using a CPAP machine. Plaintiff asserts that these continued sleep apnea symptoms interfered with plaintiff's concentration, persistence, and pace.

Although the burden is on plaintiff at step two of the sequential evaluation, <u>see</u> <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998), plaintiff has offered no meaningful argument in support of the claim that the ALJ erred by failing to find plaintiff's sleep apnea to be severe even when he was using a CPAP at night. Plaintiff merely recites the existence of medical diagnoses for daytime fatigue caused by sleep apnea and asserts that it impacted plaintiff's concentration, persistence, and pace, but does not demonstrate that this fatigue was so impactful on plaintiff's

5

ability to perform these or other basic workplace functions that it should be deemed "severe" for purposes of step two. The ALJ also considered the evidence plaintiff cites to in support of his argument and reasonably determined that the impact of the symptoms of sleep apnea that were still present when plaintiff was using a CPAP machine were not so great as to constitute "severe" impairments for step two purposes. See AT 18. Accordingly, the ALJ did not err in finding plaintiff's sleep apnea to be not severe when he used a CPAP machine. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

Moreover, even assuming for the sake of argument that the ALJ technically erred by not finding this impairment to be severe for purposes of step two, such error was harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, because the ALJ found other impairments to be severe at step two, the ALJ proceeded to subsequent steps of the sequential disability evaluation process. Furthermore, she considered the impact of daytime fatigue, and, indeed, all impairments regardless of their severity, when determining plaintiff's RFC. See AT 18 ("All impairments regardless of severity have been considered in the claimant's residual functional capacity."), 20 (stating that the ALJ's RFC determination was based on "careful consideration of the entire record"). Therefore, any error the ALJ could have committed at step two by finding plaintiff's sleep apnea not severe when plaintiff used a CPAP machine would have been, at most, harmless.

### 2. *Diabetes*

Plaintiff next asserts that the ALJ erred in finding that plaintiff's diabetes was not a "severe" impairment. Plaintiff contends that Dr. Murray, a consulting endocrinologist, conducted a monofilament test of plaintiff's feet that indicated that plaintiff had lessened sensation and noted that plaintiff exhibited occasional numbness in his hands and feet as a result of plaintiff's diabetes. As noted above, the burden is on plaintiff at step two of the sequential evaluation to prove that an impairment is "severe," meaning that he must show that an impairment causes more than a minimal effect on his ability to work. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). With regard to this impairment, plaintiff merely recites the findings of Dr. Murray without

demonstrating how those findings show how this impairment impacts plaintiff's ability to engage in basic work activities. Without any indication that plaintiff's diabetes would have caused limitations on plaintiff's ability to engage in basic work activities beyond the limitations assessed by the ALJ, plaintiff has not met his burden in demonstrating that the ALJ should have determined this impairment was "severe" at step two.

### 3. *Complications Arising from Extreme Obesity*

As an initial matter, the ALJ did recognize plaintiff's extreme obesity as a "severe" impairment at step two. AT 17. Nevertheless, plaintiff appears to argue that the ALJ failed to properly recognize the impact plaintiff's extreme obesity had on plaintiff's lower back and how it compounded his sleep apnea and depression. However, what plaintiff appears to claim as additional impairments are actually symptoms of plaintiff's extreme obesity, which the ALJ did list as "severe." Moreover, plaintiff fails to assert what additional limitations the impairments related to his extreme obesity caused beyond those that the ALJ took into account in her RFC decision. See AT 18, 20. Accordingly, plaintiff's argument lacks merit.

### B. The ALJ Properly Considered the Medical Opinions in the Record When Determining Plaintiff's RFC

#### 1. *Dr. Hongsakaphadana's Opinion*

Next, plaintiff argues that the ALJ improperly gave reduced weight to the opinion of Dr. Hongsakaphadana, one of plaintiff's treating physicians.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

1  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be
2  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  <u>Id</u>. at
3  830.  While a treating professional's opinion generally is accorded superior weight, if it is
4  contradicted by a supported examining professional's opinion (e.g., supported by different
5  independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d
6  1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In
7  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical
8  findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,
9  minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a
10 non-examining professional, without other evidence, is insufficient to reject the opinion of a
11 treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

12    Dr. Hongsakaphadana treated plaintiff from July of 2011 to January of 2013.  During her
13 initial examination of plaintiff in July of 2011, Dr. Hongsakaphadana gave plaintiff a routine
14 physical exam, prescribed Paxil for plaintiff's anxiety, noted that plaintiff's depression was
15 stable, and referred plaintiff for gastric bypass surgery.  AT 328.  In October of 2011, she
16 diagnosed plaintiff with diabetes mellitus, back pain, anemia, depression, hypertriglyceridemia,
17 and morbid obesity.  AT 321.  Dr. Hongsakaphadana wrote a letter on January 30, 2012 noting
18 plaintiff's impairments and that plaintiff could stand for only 15 minutes at a time and required
19 breaks every 15 minutes due to his morbid obesity.  AT 378.

20    On June 4, 2012, Dr. Hongsakaphadana filled out a multiple impairment questionnaire
21 opining on the impact plaintiff's limitations had on his ability to perform certain work-related
22 activities.  AT 372-75.  In this questionnaire, Dr. Hongsakaphadana again diagnosed plaintiff with
23 morbid obesity, diabetes mellitus, depression, anxiety, and hypertriglyceridemia.  AT 372.  With
24 regard to work-related activities, she opined that plaintiff could not walk a single city block
25 without rest or severe pain, could sit for no more than 30 minutes at a time, and could not stand
26 for more than 15 minutes at a time.  AT 373.  She further opined that plaintiff could sit a total of
27 about 4 hours and stand or walk for a total of 2 hours in an 8-hour workday.  AT 374.  She also
28 determined that plaintiff needs to walk every 30 minutes for a period of 20 minutes at a time.  <u>Id.</u>

However, she also noted that plaintiff did not need a cane or other assistive device when standing or walking, did not need to lie down at unpredictable intervals during an 8-hour workday, and did not need to have his legs elevated when engaging in prolonged sitting. AT 374.

While Dr. Hongsakaphadana determined that plaintiff's ability to lift and carry objects was affected by his impairments, she did not opine the degree to which this ability was impaired. AT 373-74. Nor did she provide an opinion as to any limitations plaintiff may have with regard to the ability to twist, stoop, bend, crouch, squat, climb stairs, climb ladders, or engage in reaching, grasping, and fingering activities. AT 375. She also opined that plaintiff's impairments could "frequently, i.e., 40% or more of the time," interfere with plaintiff's ability to perform even simple work task, but did not indicate whether those impairments would cause plaintiff to miss one or more days of work per month. AT 372, 375. She found plaintiff's overall prognosis to be "fair." AT 372.

The ALJ gave Dr. Hongsakaphadana's opinion only "partial weight" based on the following reasons:

> Dr. Hongsakaphadana's opinion is not fully consistent with Dr. Charneco's opinion; the two doctors are colleagues at the same health clinic. She fails to explain why the claimant would only be able to sit for four hours when the record shows that the claimant spends most of his day sitting. Dr. Hongsakaphadana does not provide any source for or explanation of the claimant's extreme pain and fatigue. On the other hand, certain aspects of the [sic] Dr. Hongsakaphadana's opinion are in fact consistent with the residual functional capacity determined in the decision. Yet again, she does not appear aware that the claimant was not using a CPAP and had not used one since late 2011. Finally, her opinion is not consistent with her treatment records.

AT 22 (citations to the record omitted). These were specific and legitimate reasons for assigning reduced weight to Dr. Hongsakaphadana's opinion that were supported by substantial evidence in the record.

The ALJ's determination that Dr. Charneco's opinion contradicted Dr. Hongsakaphadana's opinion constituted a proper basis for discounting the latter physician's opinion. See Andrews, 53 F.3d at 1041. Indeed, Dr. Charneco's treating notes, which were developed just 2 months prior to Dr. Hongsakaphadana's opinion, indicate that plaintiff was able

9

1    to walk for up to three blocks at a time without pain, while Dr. Hongsakaphadana opined that
2    plaintiff could not walk even a single block without pain.  AT 354, 373.  Similarly, Dr. Charneco
3    opined that plaintiff could "sit all day without pain," while Dr. Hongsakaphadana found that
4    plaintiff could sit for no more than 30 minutes at a time.  Id.  It was "solely the province of the
5    ALJ to resolve the conflict" between these two treating physicians' opinions.  Andrews, 53 F.3d
6    at 1041 (citing Magallanes, 881 F.2d at 751).  Accordingly, the ALJ found Dr. Charneco's
7    opinion to be consistent with the ALJ's findings supporting her RFC determination, while she
8    found that Dr. Hongsakaphadana's opinion to be only partially consistent with the rest of the
9    record.  AT 22.  Because there was substantial evidence to support her conclusion, the ALJ did
10   not err in making this determination.
11          The ALJ further noted that Dr. Hongsakaphadana's opinion that plaintiff could sit a total
12   of only 4 hours in an 8-hour day appeared to conflict with the rest of the record, which indicated
13   that plaintiff could and did spend much of his day in a sitting position.  This, too, was a proper
14   reason for assigning diminished weight to Dr. Hongsakaphadana's opinion that was supported by
15   substantial evidence in the record.  To be sure, plaintiff himself stated that he spent "all day"
16   engaged in activities such as watching television, playing video games, and using a computer, all
17   of which generally involve sitting, and had to sit while performing other activities such as
18   washing dishes.  AT 51-53, 191.  Furthermore, plaintiff's other treating physicians found that
19   plaintiff "[c]an sit all day without pain."  AT 354.
20          Finally, the ALJ determined that Dr. Hongsakaphadana's opinion conflicted with her own
21   records, which was yet another valid reason for assigning her opinion reduced weight.  See
22   Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that discrepancies within a
23   treating physician's opinion regarding the claimant's capabilities constitute a "clear and
24   convincing reason" for not relying on that physician's opinion).  For instance, Dr.
25   Hongsakaphadana opined that plaintiff could stand or walk for no more than 2 hours total in an 8-
26   hour workday, but also opined that plaintiff must walk every 30 minutes for a length of 20
27   minutes at a time.  AT 374.  The ALJ was permitted to rely on such discrepancies to support her
28   decision to assign reduced weight to Dr. Hongsakaphadana's opinion.

For the above reasons, the ALJ assignment of reduced weight to Dr. Hongsakaphadana's opinion was supported by proper reasons that were backed by substantial evidence. Accordingly, the ALJ's assessment was not made in error.

### 2. *ALJ's Duty to Develop the Record*

Plaintiff further asserts that the ALJ should have recontacted Dr. Hongsakaphadana to obtain clarification of her apparently self-contradicting opinion. Plaintiff also argues that the ALJ should have also recontacted Dr. Murray to obtain further clarification of "the extent of the neuropathy in the plaintiff's feet and hands," which would have assisted the ALJ in determining the severity of plaintiff's diabetes. ECF No. 16 at 21.

"The claimant bears the burden of proving that she is disabled." Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999). An ALJ is required to recontact a physician only if the physician's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The mere fact that Dr. Hongsakaphadana's opinion contained apparently incongruous determinations did not require the ALJ to seek further clarification from this physician. To the contrary, the ALJ was permitted to and did determine that these inconsistencies supported the assignment of diminished weight to Dr. Hongsakaphadana's opinion. With regard to Dr. Murray's report, there is no indication that the information therein was insufficient or too ambiguous for the ALJ to make a determination regarding the impact of plaintiff's diabetes. The ALJ, with support in the record, properly found the evidence in the record adequate to make a determination regarding plaintiff's disability. Accordingly, the ALJ did not have a duty to recontact these two physicians.

### 3. *Dr. Jaituni and Dr. Do*

Plaintiff also appears to briefly argue that the ALJ improperly assessed the opinions of Dr. Jaituni and Dr. Do, two non-examining physicians who reviewed plaintiff's records. Plaintiff asserts that these two doctors' opinions were insufficient to contradict the treating opinion of Dr. Hongsakaphadana. However, the ALJ properly assigned reduced weight to Dr. Hongsakaphadana's opinion for the reasons stated above without resorting to these two physicians' opinions to support this determination. Accordingly, plaintiff's contention is without

11

merit. Plaintiff also contends that the ALJ improperly relied on these opinions because neither physician reviewed the fully-formed medical record when developing their respective opinions. However, this did not limit the ALJ from finding that these two physicians supported her RFC determination. A review of both opinions shows that they were generally consistent with the other medical evidence in the record that the ALJ properly used to support her RFC determination. Accordingly, the ALJ did not err in her treatment of these two opinions.

### C. The ALJ Properly Assessed the Credibility of Plaintiff's Testimony

Third, plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's testimony because she determined that it was only partially credible without providing clear and convincing reasons for doing so.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek

treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony to be "partially credible" based on the following reasons:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual; further treatment appears to hinge completely on significant weight loss and smoking cessation. Treatment for his psychiatric impairments has been quite routine and conservative in nature; he has received not [sic] psychotherapy and has refused referrals to mental health specialists. Despite the complaints of allegedly disabling symptoms, there have been significant periods since the alleged onset date during which the claimant has not taken any medications for those symptoms. He has tended to cease taking prescribed psychotropic medications, and has been noncompliant with use of CPAP, diet, and diabetes medications. Finally, but not exhaustively, review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

AT 23.

As an initial matter, plaintiff argues that the ALJ failed to take into consideration all seven of the factors set forth in SSR 96-7p when assessing the credibility of plaintiff's testimony.[2] This

---

[2] SSR 96-7p provides in pertinent part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;

argument, however, is not well taken.  A review of the ALJ's decision reveals that the ALJ particularly discussed plaintiff's daily living activities, claims regarding pain, the impact of plaintiff's medications and treatments, and the other factors along with the objective evidence when addressing plaintiff's testimony.  See AT 20-23.  In short, the ALJ utilized the proper review standards when considering plaintiff's statements.

Next, plaintiff argues that the ALJ erred in finding that plaintiff's daily living activities contradicted his claim of total disability as a reason in support of her adverse credibility determination because she failed to make a connection between plaintiff's daily living activities and plaintiff's ability to perform "substantial gainful activity." ECF No. 16 at 17.  However, this argument is without merit because it does not appear from the ALJ's decision that the ALJ relied on plaintiff's daily living activities as a reason for discounting plaintiff's testimony.  While the ALJ addressed plaintiff's daily activities more generally in her discussion of plaintiff's testimony, and referred to the incongruities between plaintiff's daily living activities and Dr. Hongsakaphadana's functional opinion in support of her decision to assign diminished weight to that opinion, she did not specifically refer to these activities in support of her decision to discount plaintiff's testimony.

---

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1996 WL 374186, at *3.

Finally, plaintiff asserts for the first time in his reply brief that the ALJ's reasoning that plaintiff was not credible because he worked only sporadically prior to his alleged onset date is unsupported by the record, therefore making the ALJ's adverse credibility determination erroneous. However, even assuming for the sake of argument that the record did not support the ALJ's reasoning, such an error would have been harmless because the ALJ gave additional valid reasons for discounting plaintiff's testimony that plaintiff does not in any way contest. Because plaintiff does not raise any arguments concerning these additional reasons, the court applies the established principle of review that issues not specifically and distinctly raised and argued in the opening brief are generally not considered. See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court will "review only issues which are argued specifically and distinctly"); International Union of Bricklayers and Allied Craftsmen, etc. v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985); Kopczynski v. The Jacqueline, 742 F.2d 555, 560 (9th Cir.1984) (claims of error on appeal "must be specific").

Moreover, a review of the ALJ's additional reasons shows that they were proper reasons for discounting plaintiff's testimony and were supported by substantial evidence from the record. For instance, the ALJ noted that plaintiff received only conservative treatment for his impairments and that his condition tended to improve when on such treatment, which was a proper reason for finding plaintiff claims of disabling pain less than fully credible, Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), and was supported by the medical record, see AT 305, 307, 344, 358, 475. The ALJ gave proper reasons for her adverse treatment of plaintiff's testimony that were supported by substantial evidence, which plaintiff does not contest. Therefore, the ALJ did not err in making her adverse credibility determination.

D.   The ALJ Properly Assessed the Lay Witness Testimony

Fourth, plaintiff asserts that the ALJ did not properly consider the lay testimony of plaintiff's mother and plaintiff's aunt.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."

15

1  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,
2  918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's
3  symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to
4  discount the testimony of the lay witnesses, he must give reasons that are germane to each
5  witness." Dodrill, 12 F.3d at 919.
6      Here, the ALJ determined that the testimony provided by the lay witnesses, including
7  plaintiff's mother and plaintiff's aunt, "appear[ed] generally credible." AT 21. She further
8  determined, however, that "their reports and the objective record do not support a finding of
9  disability as defined by the Social Security Act." Id. Plaintiff contends that this determination
10 was made in error because it shows that she ignored certain aspects of these parties' statements.
11 In particular, plaintiff claims that the ALJ ignored these parties' testimony regarding how plaintiff
12 rarely leaves his home due to agoraphobia. However, this argument is without merit because the
13 ALJ made it clear in her discussion of plaintiff's RFC that she considered the entire record,
14 including all lay witness testimony when developing her RFC conclusion. AT 20 (stating that the
15 ALJ came to her RFC conclusion "[a]fter careful consideration of the entire record"). In fact, the
16 ALJ expressly addressed the testimony of plaintiff's mother and plaintiff's aunt in her RFC
17 discussion and found both of their testimonies to be "generally credible." AT 21. Contrary to
18 plaintiff's assertion, there is no indication in the record that the ALJ ignored any of the lay
19 witness' testimony when making her RFC determination. It appears that the ALJ credited the lay
20 witness' testimony concerning the impact of plaintiff's anxiety and agoraphobia when
21 determining that the plaintiff would be limited from having any contact with the public, but
22 reasonably determined that such testimony was insufficient to support a finding of disability. AT
23 20-21. Accordingly, plaintiff's claim that the ALJ erred in assessing the lay witness testimony is
24 without merit.
25 /////
26 /////
27 /////
28 /////

   E. <u>The ALJ Properly Considered the Evidence in the Record Concerning Plaintiff's Mental Impairments Even When the New Medical Evidence First Proffered to the Appeals Council is Taken Into Account</u>

  Finally, plaintiff appears to argue that the ALJ erred in finding that plaintiff's impairments did not meet a listing at step three. Plaintiff asserts that the evidence in the record that was before the ALJ actually demonstrates that plaintiff has moderate-to-severe restrictions with respect to activities of daily living, social functioning, and concentration, instead of the mild-to-moderate restrictions the ALJ determined from this evidence. Plaintiff further asserts that the record shows that "plaintiff is decompensating on an ongoing basis," rather than showing no episodes of decompensation as the ALJ determined. ECF No. 16 at 23.

  Plaintiff "bears the burden of proving that . . . [ ]he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." <u>Burch v. Barnhart</u>, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). However, plaintiff does not in any way show which evidence from the record supports his assertion. Moreover, plaintiff makes no indication regarding which listing or listings plaintiff's impairments supposedly met or equaled. Accordingly, plaintiff's cursory argument fails to meet his burden. <u>See id.</u> at 682-83 (finding that the plaintiff did not meet her burden in showing that the ALJ erred in not finding that she met a listing at step three when the plaintiff "[did] not specify which listing she believes she meets or equals . . . [and did] not set forth any evidence which would support the diagnosis and findings of a listed impairment.").

  Plaintiff also claims that the July 1, 2013 opinion of Dr. Davis, a non-treating and non-examining psychiatrist retained by plaintiff's counsel to review plaintiff's medical records after the ALJ's hearing, <u>see</u> AT 478-89, shows that the ALJ's RFC determination was incorrect. As an initial matter, Dr. Davis' opinion was submitted to the record for the first time when this case was before the Appeals Counsel; after the ALJ's adverse decision had already been rendered. The

/////

1  Appeals Council made this opinion part of the administrative record.[3]  Accordingly, this court
2  will review the ALJ's decision under the substantial evidence standard with due consideration of
3  this opinion.  See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff
4  submitted additional materials to the Appeals Council in requesting review of the ALJ's decision,
5  court may properly consider the additional materials because the Appeals Council addressed them
6  in the context of denying plaintiff's request for review); see also Ramirez v. Shalala, 8 F.3d 1449,
7  1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision
8  of the ALJ after examining the entire record, including new material, court considers both the
9  ALJ's decision and the additional materials submitted to the Appeals Council); Brewes v.
10 Comm'r of Social Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).

11       A review of Dr. Davis' opinion demonstrates that it does not materially affect the ALJ's
12 decision such that it is no longer supported by substantial evidence.  Dr. Davis' opinion was not
13 based on any additional clinical findings or other medical evidence that was not before the ALJ
14 when she rendered her decision finding plaintiff not disabled.  For the reasons discussed above,
15 the ALJ's decision was based on substantial evidence from the record, which included the exact
16 same medical evidence that was reviewed by Dr. Davis in forming his opinion.  The mere fact
17 that Dr. Davis drew a conclusion from this evidence that plaintiff was more limited than what the
18 ALJ had determined is insufficient to undermine the ALJ's reasonable and well-supported
19 decision.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold
20 the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").
21 When considered in the context of the rest of the record, Dr. Davis' opinion does not undermine
22 the ALJ's decision to the point that it is no longer supported by the substantial evidence in the
23 record.

---

[3] Plaintiff makes the additional argument that the Appeals Council failed to consider Dr. Davis' opinion when denying plaintiff's request for review of the ALJ's adverse disability determination. However, the record demonstrates to the contrary.  The Appeals Council expressly noted in its decision denying review that it received Dr. Davis' July 1, 2013 opinion as additional evidence, considered the opinion as part of the record, and determined that "this information [did] not provide a basis for changing the [ALJ's] decision."  AT 2, 5-6.  Accordingly, plaintiff's argument is without merit.

V. <u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 2, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 Castaneda.ss